# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENS-PETER ENGELUND, *et al.*, | No. 4:20-CV-00604 |
| Petitioners, | (Judge Brann) |
| v. | |
| WARDEN CLAIR DOLL, *et al.*, | |
| Respondents. | |

## MEMORANDUM OPINION

### JULY 14, 2020

## I.  BACKGROUND

Petitioners filed this 28 U.S.C. § 2241 petition in April 2020 alleging that their continued civil detention by the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") violated their substantive and procedural due process rights under the Fifth Amendment to the United States Constitution.[1] Specifically, Petitioners alleged that their various chronic medical conditions placed them at an increased risk of death or serious injury if exposed to COVID-19. Petitioners also alleged that their confinement interfered with their access to counsel.[2]

---

[1] Doc. 1.
[2] *Id.*

Petitioners filed a motion for a temporary restraining order ("TRO"), seeking their immediate release from custody at York County Prison ("York County") and Pike County Correctional Facility ("Pike County") until such a time as they were no longer at risk of serious injury or death from COVID-19.[3] Shortly thereafter, this Court denied Petitioners' request for a TRO and directed briefing on the only matter that had not been briefed by the parties—Petitioners' contention that Respondents had violated their right of access to counsel.[4] Respondents filed their response on June 1, 2020.[5]

On June 6, 2020, Petitioners filed a motion to voluntarily dismiss their petition, without prejudice, in accordance with Federal Rule of Civil Procedure 41(a)(2).[6] Petitioners assert that conditions within the facilities have materially changed since their petition was filed and they now have adequate access to counsel, meaning that the petition should now be dismissed.[7] Respondents oppose the motion, arguing that any dismissal should be with prejudice.[8] Respondents contend that: (1) they have undertaken significant efforts and expense in defending this action; (2) this matter is at a dispositive posture; (3) the conditions related to access to counsel have not significantly changed since the petition was filed; and (4) Respondents

---

[3] Doc. 2.
[4] Docs. 31, 32, 33.
[5] Doc. 36.
[6] Doc. 37.
[7] *Id.* at 2-4.
[8] Doc. 38.

would be forced to expend significant resources in defending against a hypothetical second petition, all of which militates in favor of dismissal with prejudice.[9] The matter is ripe for disposition and, for the following reasons, Petitioners' motion will be granted.

## II. DISCUSSION

Pursuant to Fed. R. Civ. P. 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." When ruling upon such a motion, "the decision to allow voluntary dismissal is left to the sound discretion of the district court."[10] "The purpose of the grant of discretion under Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions."[11]

> In ruling on a motion to dismiss under Rule 41(a)(2), a court must examine the prejudice to the defendant, both in terms of legal prejudice and litigation expense. Relevant factors in this analysis include (1) the excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by the defendant in preparing for trial; (3) the extent to which the current suit has progressed; (4) the plaintiff's diligence in bringing the motion to dismiss and explanation therefore; and (5) the pendency of a dispositive motion by the non-moving party.[12]

---

[9] *Id.* at 8-16.
[10] *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 842 (3d Cir. 2014).
[11] *Dodge-Regupol, Inc. v. RB Rubber Prod., Inc.*, 585 F. Supp. 2d 645, 652 (M.D. Pa. 2008) (ellipsis and internal quotation marks omitted).
[12] *Id.* (citation omitted).

"Generally, a motion for dismissal should not be denied absent substantial prejudice to the defendant,"[13] prejudice which must entail something "other than the mere prospect of a second lawsuit."[14]

Although this presents a close question, an analysis of the relevant factors demonstrates that Petitioners' motion for voluntary dismissal should be granted. As to the first factor, there would likely not be significant excessive or duplicative expenses should a second § 2241 petition be filed in the future. Although, as discussed below, the Government has expended a great deal of resources in defending this matter, those are primarily expenses that would not be incurred again should a second action be filed. For example, the Government's primary resource expenditure seems to relate to its exhaustive research of Petitioners' histories, and such research would not need to be conducted a second time in a hypothetical second action. Thus, the first factor militates in favor of granting Petitioners' motion to dismiss without prejudice.

With respect to the second factor, the Government appears to have expended significant resources in defending against this petition and motion for a TRO, having undertaken the "expeditious collection, review, and analysis of more than 2,000 pages of records for fifteen individuals, assessing each Petitioners' unique immigration history and status of their ongoing removal proceedings, thoroughly

---

[13] *Selby v. Inspira Med. Centers, Inc.*, No. 18-9675, 2018 WL 6696775, at *1 (D.N.J. Dec. 19, 2018) (quoting *Sporn v. Ocean Colony Condo. Ass'n,* 173 F.Supp.2d 244, 255 (D.N.J. 2001)).
[14] *In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829, 863 (3d Cir. 1990).

investigating Petitioners' allegations regarding the circumstances at the facilities, and securing multiple declarations."[15] However, this is tempered by the fact that, as discussed above, these are primarily fixed costs that likely would not need to be repeated in a second action, should one be filed. Accordingly, the second factor weighs slightly against granting Petitioners' motion.

The third factor likewise weighs against granting Petitioners' motion. As Respondents note, this matter is effectively nearing its conclusion. This Court previously addressed the merits of Petitioners' Fifth Amendment due process claims when considering Petitioners' motion for a TRO, and the Court concluded that Petitioners were unlikely to succeed on the merits of those claims.[16] Because, as a practical matter, the decision denying a TRO resolved the due process claims, this Court issued a show cause order directing Respondents to brief the only outstanding matter left in the petition—Petitioners' claim related to the denial of access to counsel.[17] Respondents have issued their response, meaning that the remaining matter is also close to a determination on the merits.[18]

With regard to the fourth factor, Petitioners explain that the rapidly evolving situation surrounding COVID-19 and the Government's response to the pandemic only recently necessitated their motion to dismiss. Conditions within the facilities

---

[15] Doc. 38 at 9.
[16] Doc. 31 at 20-31.
[17] Doc. 33.
[18] Doc. 36.

have improved since the filing of the petition, and the recently-lifted lockdown orders, combined with the fact that "the facilities have clarified that in-person visits are now permitted, and attorneys for the petitioners have had easier access to their clients since that time," means that the remaining claim need no longer be pursued at this time.[19] While Respondents challenge the timing of the motion to dismiss,[20] as Petitioners note, many of these "changes occurred very recently, including the lifting of the stay-at-home order for all Pennsylvania counties on June 5, 2020," only six days prior to the date that Petitioners' filed their motion for voluntary dismissal.[21]

Additionally, there was—understandably—significant confusion in the early days of the pandemic among both prisons and attorneys regarding attorney-client meetings.[22] Although this was later clarified to some degree, visitation policies were not fully detailed until after this § 2241 petition was filed, Pike County apparently still has not issued a written visitation policy,[23] and Pennsylvania's lockdown order was not lifted until early June. Thus, these recent experiences enable attorneys to understand the full scope of the visitation policies at the facilities.

Similarly, although the conditions within the facilities are much the same as they were when this § 2241 petition was filed, there are notable differences. For example, York County is administering COVID-19 tests to all detainees who are

---

[19] Doc. 37 at 4.
[20] Doc. 28 at 11-12.
[21] Doc. 37 at 5.
[22] *See* Doc. 40-1.
[23] Doc. 40 at 8.

transferred to that facility "if they do not possess confirmation of a negative test from the previous facility."[24] This is a notable improvement that significantly decreases the likelihood that COVID-19 will be introduced to the detainee population at York County. Additionally, the passage of time has made clear what this Court previously concluded: the facilities have taken adequate precautions to protect detainees. Since this petition was filed, there has not been a single new infection at York County,[25] while infections at Pike County have been eliminated after the facility experienced an outbreak early on during the pandemic.[26]

Collectively, this information supports Petitioners' contention that the dispositive facts surrounding their claims have recently changed to an extent that their petition is no longer necessary. It also supports Petitioners' assertion that these facts changed or were clarified only recently, and that there was no undue delay in the filing of their motion to dismiss.[27] This factor therefore weighs in favor of granting Petitioners' motion.

Finally, although this petition is nearing its conclusion, there is no pending dispositive motion. Thus, this factor weighs slightly in favor of granting Petitioners'

---

[24] *Kilikpo v. Doll*, No. 4:20-CV-00902, 2020 WL 3498172, at *2 (M.D. Pa. June 29, 2020).
[25] *Id.*
[26] Immigration and Customs Enforcement, *ICE Guidance on COVID-19: ICE Detainee Statistics*, https://www.ice.gov/coronavirus#citations (last visited July 13, 2020).
[27] Notably, Petitioners do not appear to gain any advantage from the timing of their filing. Moreover, Petitioners' attorneys are appearing in this matter *pro bono*, meaning that the longer this matter proceeds, the more time, effort, and money the attorneys expend without hope of recouping those expenditures. Simply put, pointlessly dragging this matter out would not be in the interests of Petitioners' attorneys, which supports the notion that there was no undue delay here.

motion. Weighing the five relevant factors leads the Court to conclude that the balance tips—if only marginally—in favoring of permitting dismissal of the petition without prejudice. The Government would undoubtedly suffer some prejudice if Petitioners decide to file a similar § 2241 petition in the future. However, "the mere prospect of a second lawsuit"[28] or the fact that Petitioners "may gain some tactical advantage by a voluntary dismissal"[29] is insufficient reason to deny the motion. Consequently, Petitioners' motion to dismiss will be granted.

## III. CONCLUSION

For the foregoing reasons, Petitioners' motion for voluntary dismissal without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2), will be granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[28] *In re Paoli,* 916 F.2d at 863.
[29] *Environ Prods., Inc. v. Total Containment, Inc.,* No. 94-7118, 1995 WL 459003, at *5 (E.D. Pa. July 31, 1995).